Then we'll call the next case, 516-0261 in re Marriage of Haertling. Three in a row. I don't know that I'll be able to get that one completely out of my head. As you may have noticed if you were sitting in the audience, I stand up occasionally and it has nothing to do with what you're saying. It has to do with my back. So, okay, ladies, are you ready to proceed? All right, Ms. Bradley. I have the support of the council. Good afternoon, Your Honor. My name is Amanda Bradley. I represent Petitioner Appellant Carrie Haertling. In December of 2011, she filed for divorce. In June of 2012, she was granted child support on a temporary basis. At that point in time, the Maryland unit, no divorce had been granted, had a gross income of approximately $9,400. Her soon-to-be ex-husband was bringing home approximately 7,000 gross, 4,600 net. She was making approximately 2,000 net and 2420 gross. In February of 2013, her temporary child support of $300 was abated. The time the temporary child support was granted, her soon-to-be ex-husband was also paying for the children's education and for many of the children's medical expenses. The divorce was granted in May of 2013 and slightly modified in June of 2013. At the time of the divorce, the Maryland unit was making $6,136 gross per month or 3,950 net, of which the now ex-husband, Jason, was making 3,000 gross and approximately 1,475 net. And Carrie was making 2,475 net and 3,175 gross. In January 2016, after Jason obtained a new job, Carrie filed for child support. Of note, when the divorce was granted in May of 2013, there was no child support. Why not? The parties were sharing the children on about a 60-40 basis. It's actually 61.7, I believe, 31.2 basis. Jason had temporarily lost his job to the poor economy and was looking for better work. They were both bound to be able to support the children during the times they had them, and child support was denied. It does not appear from the record that Jason actually ever petitioned for child support. Carrie did. Her petition was denied. There is no basis stated in the record. It is a simple denied. That's what I was wondering. What evidence was put forward to show the deviation? It was not a deviation. It was a straight denial. All right. What evidence was there to substantiate that? I was not trial counsel in May of 2013. Does the record give you any idea? Because I couldn't see it in order. I am not able to determine that there is no calculation of child support in May of 2013, nor in the Supplemental Judgment of Dissolution of Marriage from July of 2013, which means that it is a straight denial. To have a deviation, the court must state the reasons for the deviation and calculate the child support that would be due after the deviation. Do you agree with me that a denial is a deviation? No, it's a straight denial. So the court doesn't have to calculate anything? The court does not have to calculate anything. It's a straight no. So why? The court simply says that they are both well employed at the Appendix C College, pursuatively employed, and capable of supporting their children during the times they have the children. So a deviation would only be necessary if they found that one party owed money and was being ordered to pay less than what the statutory guidelines suggest? Correct. But by a simple no answer, no calculation is needed, so it's not a deviation from that calculated amount that would be owed? Correct. I was confused on that too. Well, no. I mean, no should have some explanation, so I agree with you. I agree, but I did not see anything in the record as to why they said they're not granting her. I mean, they didn't say you're both equally employed or you're both capable of caring for the kids when you have possession of the kids. And there was a difference, like a 40% difference, or I'm trying to think. 60-40 or something like that in the amount of time spent with the children. Right. It's approximately 60-40. I mean, what's ordered and what happens are, of course, two different things. Let's just talk about what was ordered. It's a 61-point change and a 38-point change. You can break it down based on school days. I broke it down in the position statement using the same math that broke it down in the brief. It's approximately a 61 split times. And, again, at age 12, he says they're both, the trial judge, May 2013, says they're both capable of supporting the children. And they're both well-employed during the time that they have the children. In January 2016, about a year after Jason had obtained new employment, commiserate with the employment that he had had at the time the divorce had been filed, Carrie filed for child support. It was denied in March of 2016. It was denied in part because my client was not working 40 hours a week. My client has never worked 40 hours a week during the course of the marriage. There's no requirement in the child support statute that I can find that the parent with more time works 40 hours a week. It was assumed that a full-time job is 40 hours a week. The Department of Labor does not define a full-time job as 40 hours a week. It only states that certain employees receiving an hourly wage may be entitled to overtime if they exceed more than 40 hours a week. Further, the Illinois legislature has not defined a full-time job as 40 hours a week. They, too, only state that some employees who are hourly employees that work more than 40 hours a week may be entitled to receive overtime wages. Didn't the court also calculate what she would earn approximately? Yes, ma'am. She did? And do you know where that came from? She makes approximately $40 an hour. Okay. And so he assumed certain things that she would be able to get that type of work for 40 hours a week? If you take her $40 an hour and times it times 2,000 hours a year, so that's 40 weeks times 50 weeks a year, allowing for two weeks of vacation or personal days or holidays, so 40 times 2,000 is 80,000. That would be her gross amount, not her net. However, there is no requirement that the parent with more time works a 40-hour-a-week job before he or she can get child support. I assume we didn't see that in the factors to be considered. No. Now, when these parties were divorced and their parenting plan was entered, there was no custodial parent nominated. But that doesn't mean that my client does not have the children more of the time. You can call prior to the amendment to the legislature. You could call the parenting time whatever you wanted. You didn't have to nominate a custodial parent. You could say each parent had time. You could say each had visitation. That doesn't mean that she has less time or more time. If you look at and add up all the time she has, she has over 61% of the time. The court then was required to look at if there was a change. Now, if you take the respondent's argument that in May of 2013, it was a $0 order, then all you had to look at is was there a $10 change pursuant to the statute. In 2016, he would have been paying pursuant to the child support statute, the 28%, almost $1,650, but certainly more than $10. You must look for a substantial change. We pled there is no answer. I realize that this court has ruled in Crawford County Oil. Crawford County Oil is limited by its own facts. There's not a motion for semi-judgment pending. There's not a motion to dismiss pending. Their failure to answer does act as a judicial admission. The first, the second, and the Supreme Court have all noted as such. In cases such as Andronovic's, Why Not?, and DeVecky's, they've all noted that in the absence of a motion to dismiss or a motion for semi-judgment, a failure to answer a complaint does act as a judicial admission. The other way to see it is he did put on an affidavit. Furthermore, the children are two and a half years older. There is a change in income. And while my client has more income, we also look at the growth of what the children would have had if the marital unit had stayed together. Rather, the trial court focused on a singular thing. Why is my client working 40 hours a week? She is a parent with more time. And this legislature recently has put a great value on parenting. Whether that's the parent who provides the income to pay for children, or it's the parent who stays home to care for children. The new parenting allocation statutes look at both questions. This is the job my client had before the divorce. It was always contemplated as life went forward, she would work more hours. At the time she was granted child support, her statutory net income was $2,060. She got $300, bringing her to $2,300. But her soon-to-be ex-husband was paying for many debts, such as the children's education that she now pays for. Again, there is no standard that she has to work a 40-hour-a-week job. And there is no definition that 40 hours a week work is a full-time job. Our Department of Labor has not defined it as such. Because of the singular focus on that question, along with, was he supposed to start paying, which I do not agree, and it is not an issue, of whether he was supposed to start paying once he got a better job, of how many hours a week my client would be working if she worked, or how much she would be making if she worked 40 hours a week, the court did not look at all of the factors which it is required to do. The Supreme Court instructs in TURP that we look at child support from the question of what is in the child's best interest. And we go from there. We did plead a substantial change. Her employment cannot be a bar to what is in these children's best interests. And her full-time employment cannot be a bar to modification of the child support order. We cannot create orders that can never be modified. The court must then calculate the child support that would be due. Furthermore, the court puts the burden of disproving the deviation from my client. When one wants a deviation in child support, it is their burden. We don't want a deviation. We'd like the full 28%. My client is in a place where she needs financial assistance to help raise the children. It is the person requesting a deviation in child support under 505 that must prove the burden. And he must plead and ask for it. Yet, there's no pleading. There's no request. There's only arguments in chambers. And the burden is placed upon us to disprove. Why? Child support was simply denied. It was simply denied in May of 2015 and again in March of 2016. If there was a deviation, in May of 2013, the deviation may continue and it would be my burden to disprove it. But there would have been a calculation of child support and stated reasons. Because there were no stated reasons and no calculation, Sobielski says it would be his burden. He argues it's a parenting time that he has. Parenting is a privilege. He does not have a child to be compensated for. He does not have equal time. Therefore, the statutory amount, 28%, is applicable. And yet, the trial court did not apply the 28%. Thus, de novo review would be appropriate. The court did not look at any of the factors beyond my client's employment status. My client, the parent with more time. Not a statutory requirement. Thank you. Did you have one little thing you wanted to finish? Thus, de novo review would be appropriate. Okay, thank you very much. Thanks. You're welcome. And you'll have some rebuttal time. Is it Gerhardt? Gerhardt. Justice Cates, Justice Chapman, Judge Barberis, my name is Lauren Gerhardt. I represent the affilee in this case, Jason Hartley. I hope you will excuse my informalities when addressing the parties, but I will address them as Kerry and Jason, respectively. We are also dealing with two major statutes under the IMDMA in this case. Section 510, which is the modification statute, and Section 505, which is the child support statute. I will also be intervening in that regard, talking about them as 510 and 505. Your Honors, we have just heard argument from opposing counsel as to why she believes that the trial court misapplied the statute by factoring only on one factor. To start out, and I'll be ending on opposing counsel's last point, the proper standard of review in this case is not de novo. We are looking at a modification of child support. In order to do that, that is a two-step process. First, you have to prove that there has been a substantial change in circumstances. That calls for a manifest weight of evidence standard. If, and only if, there has been a substantial change in circumstances, then you go to Section 505 to properly calculate child support. If you are asking, was the child support award proper or not, that is an abuse of discretion standard.  As I said, a de novo standard is only appropriate when there are no factual or credibility issues at case. In this case, we are dealing with factual issues. The factual issues are whether or not the appellant proved a substantial change in circumstances, and if they did, then we move on to Step 2, how to get child support. Opposing counsel indicates that Jason failed to answer the complaint, and therefore basically everything in that complaint is automatically deemed true. Similar to basically a discovery method of a request for admission, where if you don't answer in 24 days, those facts are deemed true. In this case, however, if we look at this court's decision in Crawford County, which came out in 2014, while the facts were different in dealing with the summary judgment issue, if you look at the finding of this court, the court says, reading Section 610 as a whole makes it clear that the legislature intended that if he applied in situations where an answer or subsequent pleading was filed, relates to the complaint, but does not expressly admit it or deny it. Instead, this court has said, when you're looking at 610 and the coded civil procedure as a whole, you also need to look at Section 1106, which shows that cases are to be legally construed. So by arguing that he failed to file an answer in automatic substantial change in circumstances, that is a very narrow reading of the law that this court found was inappropriate. He always has the right at a hearing to, even if they're presumptively true, he has the right to put on evidence that says they're not. Exactly. And the judge in her position, Judge Cameron, also has that ability. So even if facts are deemed true under 610, she has the ability to weigh the evidence that is presented in front of her and decide what is true in this case and what is not, and then what should the result be. In this case, Your Honors, there was no substantial change in circumstances, and this is a tough case, because opposing counsel wants us to think that the only factor that the court relied on was a 40-hour court leave. The fact is, this argument was held in chambers. There's no record, there's no proof of what the attorney said, what the judge said back in chambers. The judge later clarified that on the motion to reconsider, and she said part of her analysis was looking at Harry's income, but there's no proof that the trial court solely focused on this one issue. A trial court is bound and is understood to know and follow the law. So in this case, although the argument was held in chambers, the judge had arguments from both counsels, she had financial records, she had everything she needed to make her ruling. No bystander report has been filed? It has not. So again, there was no proof and nothing on the record where Judge Gomert said, I am denying this because she is not working full-time. It was part of the reasoning. Yes, we will concede that, but there's nothing that says that was the sole reason. Well, even if it was part of the reason, what duty or obligation is there on a woman to work part-time if she's caring for the children more? Right. And by all means, what obligation is there for her to work full-time? I must have said part-time. I'm sorry if I did. I meant full-time. Right. By all means, having kids is a full-time job in and of itself. But if we're looking at the facts here, if you look at page 15 of Helen's brief, Carrie admits she can work more. So the question becomes, historically, why is she not doing that? She admits she can work more. The kids are older. Well, does that mean she has an obligation to work more just because she can? She does not necessarily have an obligation, but when we're looking at the situation, we have to see whether or not there's been a substantial change in circumstances. Okay, but if she says, but you just answered that question by saying, no, there's not. She doesn't. Even though she admits she could work more, she has no obligation to work more. The judge put that obligation on her in order to get child support. Right. But the judge also, and that's what lacks proof, is the judge, we don't have proof that that's the only factor of what the judge says. Carrie, you're not working full-time, so your motion's out of here. Do we have proof that there's any other basis for her decision? If you look at the circumstances of the case and the substantial change in circumstances standard, you've got two parties. You've got Jason, whose income was zero in 2013. His income rose as he was able to get another job. You have Carrie. So in other circumstances, looking at whether or not... His income is greater, and she has 20-something percent more time with the kids. His income is greater, speculatively. In this case, though, her income, again, they were speculating as to what they could both grow, was about $15,000 to $17,000 less. See, I always find it interesting when we talk about numbers, a finite number as being speculative. She either had... He had a certain income, and at the time of the hearing, she had a certain income. And you can speculate what she could have been making, but you could also speculate that he could have gotten a great bonus at some point and been making even more. So without speculating, Justice Chapman's statement is correct, right? That she was making less than he was. One just point of clarification. Is this a modification if the initial request... I mean, I know there was a temporary order that said $300 a month because he was paying a lot of the bills and so forth. Then he lost the job. Then there was a motion, or the judgment, the final judgment on the disillusion denied child support totally. And then when she... When he got a job again, and she petitioned the court for child support, is that necessarily a request for a modification since there was nothing to modify? Or was it an initial award of child support? One could argue that it was a modification because the court had decided already we had $300. We're basically modifying it down to zero because Jason's unemployed. Now Mom's coming in and trying to modify it back up again. So Mom even admits that this is a modification. In that situation, what she has to do is be able to prove that substantial change. But my point is that when the judge denied in the judgment of disillusion any child support, regardless of what the parties think of it, in my mind, you're starting from scratch again. So that $300 order is gone. There's no modification. Yeah, it was modified and abated to zero. But then at the time of the hearing, the judge denied permanent support at all. Right. And so the next time there's a request for child support, it's not to modify the zero. It's to get support in the first place. Right. But as the trial court addressed it, it was as a modification. So if we back up to the original judgment when he was paying $300, the parties then went in. He tried to modify it down to zero. And in that situation, he's looking at the parties, looking at the incomes, saying both of them, you guys are in a tough spot. So right now, on a temporary basis, it's gone. At that point, Judge Kelly also told Mom, you've got to work more. Dad's out of work. You've got to step it up. So in this case, we have a situation where she wants to claim that she should be able to sit at home, not sit at home. She should be able to work part-time even though she claims she can work more. So again, why is she not doing that to better the lives for her kids? Well, Judge Kelly could have just as equally have said to him, hey, you might not find the perfect job, but go get a job at McDonald's to help out your family. Correct. While Mom was already working 30 hours a week. Right. And he did. He did hint at that. He said, look, you're going to be back in here. What Judge Kelly didn't want to do is put any sort of speculation on what would happen because as he said, if Dad gets a job, Dad, I'm going to try to trust you to do what you need to do, but I'm not going to necessarily make you come back in a year because then you're paying an attorney for a whole year to come back again. So again, we're back to the fact of Dad did get a new job. Mom's trying to get that child to continue paying, but she has to prove that substantial change in circumstances. Well, do you agree with the argument that if you go from zero to $10, that's a substantial change? In looking at that portion of the statute, so under 510, you have to show the substantial change in circumstances. You can get around that. First of all, do you agree that that is the law? The zero to 10. I recognize you're going to try to get around it, but let's create a baseline. Right. So the zero to 10 would be a substantial change. Under the law. Right. If you're looking at the language, though, what they do is you do not have to show a substantial change. If you're showing an inconsistency of at least 20%, but no less than $10 per month, unless you have that provision apply, you have to be receiving help or assistance from the state. So then we're still back to, that was not the case here, we are still back to the substantial change in circumstances. But the public policy of Illinois is that if you're making poverty level wages such that you have to receive assistance from the state, a $10 change would be a substantial change. If you're making 30 hours or 20 hours a week, she's also poverty level. You don't believe the public policy would say that's a substantial change. The problem is with this statute, in order for that, the $10 substantial change argument to come in, she would have to be receiving those benefits, and she's not. So then what we have to look at is basically what was her income at the time child support was zero, what was it now? I'm going around. So the court found, Judge Comerick found no substantial change in circumstances. Correct. And she found, so if there's no substantial change in circumstances, why does the income of the wife even come in? So under the statute, under the law, courts can look at the circumstances and the incomes of both the paying parent and the non-paying parent. So for example... To determine... To determine whether or not the child supports appropriate. No. You told us that first you've got to look at substantial change of circumstances. And only then, if you find that there is a substantial change, then you look to all these other factors. You move on. Right. So if the court found no substantial change, why are we talking about income? So here, in order to determine substantial change of circumstances, you can look at the income of who would be the paying parent. You can look at the income of the non-paying parent, as well as the circumstances of the kid. You can look at all of that. Courts previously have gone so far as to look at the non-paying parent and even impute their income. So for example, if a parent becomes voluntarily unemployed in efforts to evade child support or whatnot, a court can look at both scenarios. Isn't that what the court essentially did, was impute an income to her by saying that she should be employed full-time and then determining what that dollar amount would be? What the trial court did was they found that there was not a substantial change in circumstances. So yes, we have dads working more hours. Well, I don't know. You're talking out of both sides of your mouth here. That's my problem, too. That's exactly my problem. So she's imputing an income, but it seems like she's imputing the income to find no substantial change. And that's part of the problem. That is part of the problem. I agree. The opposing counsel wants to pick up on the fact that Judge Gomerich only looked at her income and simply put, the record is devoid of that. We do not have any order that says Judge Gomerich only looked at mom's income. So forgetting the only part, it's clear that she did impute mother's ability to earn more as a part of her finding no substantial change. Correct. We can agree on that. Correct. Go ahead. Finish your sentence. In terms of the entire scheme, we are looking at dad's income, mom's income, mom's imputed income, the children's situation, and then it's appropriate to determine, has there been a substantial change to warrant an award child? One more question. Sure. Can you tell me what you think the difference was between how much, let's say a month, she earned and how much the court said she could earn? She, I believe, if she was working full time, according to opposing counsel, again, we don't, we didn't have the numbers coming from the court. How much more a month, just roughly? I think overall a year, 80 gross. 80,000 more? No. No, no, no. Total. What would it be an increase? A month. The court said that she should be able to earn 80,000 gross. I'm asking about the difference. So, she was working 30%. What I'm confused about is there's no consideration of like resource allocation that the court made. I mean, if she's working these 40 plus hours, then there's going to have to be child care. And that, I mean, child care is over $1,000 a month alone. Right, and again. And the best, what's in the best interest of the child? You know, is it better to stick them in child care and you make exactly the same amount of money or a few bucks more? But then you're considered working full time and your children are in child care rather than in your company. Right. And again, I would say, you know, the hard and the tricky little nuance of this case is this hearing was held in chambers. So whether or not child care expenses were discussed, that's the question. Okay, thank you. I'm sorry. Go ahead, yes. I do have two last questions, maybe just one. Whatever you want. Do you agree that during the course of the marriage and after children were involved in it, you know, born into the marriage, that mom never worked a full time job? Correct. Okay. But her income did continue to increase. Continue to increase, right. Right. Even though she never did go back to full time. Right. And then wasn't, why isn't the fact that at the time of the requested child support, you know, the post judgment request, the fact that dad had went from unemployed to full time employment at $90,000 a year, why isn't that a substantial change of circumstances to warrant an increase in child support? It is true that a court can look at one parent and what their income is, but there's also a law that says the court can look at both parents, the circumstances of the kids as a whole. Right. So it can go both ways. So if dad's making more money, the court can also step in and see what's mom doing, you know. Would mom go ahead and voluntarily lose the money? It sounds to me like there was only one side of this equation that was looked at by the trial court and that was mom. And it disregarded the fact that dad was now making from zero to $90,000. And that that would have been perhaps a better time to do the equation of what's owed was, but that just the fact that he had went from unemployed to employed was substantial enough change of circumstances to get past that hurdle. And then perhaps do the equation to see how much he should be paying to her. Maybe then reduce a deviation from what he should have been paying based on the standard to, well, mom would have been working, it would have been, you know, we'll knock off $1,000 a month or something like that. But to stop it at the substantial change of circumstances without taking into account that, you know, and I don't see anything evidence that she took into account dad's employment at that point. Right. That's the tricky part. It was held in chambers. So then we presume that the trial court knows and follows the law and has evidence before it, albeit in chambers. But is there a denial that the trial court was aware of the fact that he was employed at that time? I believe the trial court was fully aware that he was employed. Okay. Right. Thank you. Thank you. Alright, your bone. To answer one of the questions previously on my reply brief, page 16, I do disclose what she would be making if she was working a 40-hour-a-week    She would be making approximately $4,725 per month for a 40-hour-a-week job. And she would be making approximately at the time of the hearing in March of 2016, my position statement, she was making $3,250 per month. Okay. So that's precisely my point. She'd be paying that in child care perhaps or more. Correct. And child care was discussed by the trial court on the record at page 9 and 10 where the court indicated that she had three children and were full-time herself and had child care. We all have our life resources and we all allocate them in different ways. My client does not use as much day care. She also probably didn't disclose how much money she makes. No. Day care is expensive. We did discuss summer day care in the flat denial on March 16th of child support for summer camp because the children would have to attend summer camps for both parents to work. Let me ask you this. What do you want us to do? I want the court to remand it and I would like the court to do what the trial court should have done and order the father to pay $16.41 and change based on his affidavit that is part of the court's record which is 28% of his statutory net income. Do you think that we can make a finding that the trial court was obligated to find as far as how much payment and the whole issue of deviation? Do you think we should be doing that? I think you can make the finding that his statutory net income was the, and I don't have that part of the notepad in front of me, was the amount rendering $16.41 which is $5,100 per month and remand if he wishes to prove a deviation based on the amount of time or any other factor that he has present and giving him a chance to plead. So, you think that we can find that the court erred in failing to determine that there was a substantial deviation? Yes. And you also think that we can find that under the statute three children he was obligated to pay 28% of his net income, whatever that is? Yes, two children. Two children? Yes. Okay. And do you also believe that we can address the deviation or do you think that there is a remand necessary to address any deviation if necessary? There has been no pleading so no deviation should apply. It is his burden to prove a deviation. There was no deviation granted in 2013. It would be his burden to ask for deviation now. The statutory child support would apply. He argued, even though he didn't answer, he argued that no substantial change in circumstances had occurred. He argued that. Yes. The court bought it. Yes. So, we have no pleading on a substantial deviation or any deviation. Yes. Right? What you're saying is that because he didn't answer, we should just accept your pleading. Yes. I'm not so sure that we can do that. He can always address the pleading in a hearing. Correct. He filed his financial affidavit. That's the only thing he filed addressing my pleading in January. He said, here's my financial statement. My income is $5,100. My statutory income is $5,100.  to ask for any response. A deviation argument is different than a there's no substantial change argument. And I think the trial court did focus, in large part, on her income. I think it's very clear from response and argument. You've got to get there. Even if everything you're saying is true on page R7, there's not been a substantial change in circumstances. Petitioner, my client was to make full-time efforts. And that's the substantial change in circumstances. Very different than the deviation. The deviation would be, I should be paying less because I help the children a lot. I should be paying less because our incomes are so much better. And I think you can remand and find the 28% for the one child and find that there was a substantial change in circumstances. And remand if he wants to plead and prove any deviation was necessary. Now you said 28% for one child. Two children. Just so we have that. It's the judge that has three children. Judge has three. Judge has three children. All right. Thank you very much ladies for your argument. I appreciate it. That will be taken under advisement and we'll issue an order in due course and then this court is in temporary adjournment for lunch.